UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAYCE L. SHURTZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:19 CV 1218 CDP |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Rayce Landon Shurtz brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of his application for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401, *et seq*.  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, the decision is affirmed.

### I.     Procedural History

On September 30, 2015, Shurtz filed an application for disability insurance benefits alleging a period of disability beginning July 2, 2015.  In his application,

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security.  Pursuant to Fed. R. Civ. P. 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as defendant in this action.

Shurtz alleged disability due to polycythemia,[2] congestive heart failure, hypoglycemia, sleep apnea, high blood pressure, and chronic respiratory cough. (Tr. 182.)  Shurtz's claim was denied initially.  (Tr. 99.)  On August 20, 2018, following a hearing at which Shurtz and a vocational expert (VE) testified, an administrative law judge (ALJ) found that Shurtz was not disabled as defined in the Act.  (Tr. 20.)  Specifically, the ALJ determined that Shurtz retained the residual functional capacity (RFC) to perform his past relevant work as a patient scheduler (Tr. 28-29.)  On March 26, 2019, the Appeals Council of the Social Security Administration denied Shurtz's request for review of the ALJ's decision. Shurtz has thus exhausted his administrative remedies and the decision of the ALJ stands as the final decision of the Commissioner.

## II.   Evidence Before the ALJ

With respect to Shurtz's medical records and the other evidence of record, I adopt Shurtz's recitation of facts set forth in his Statement of Uncontroverted Material Facts, ECF 16, as well as the Commissioner's Additional Material Facts, ECF 17-1, which largely incorporates the facts set forth in Shurtz's Statement. After thoroughly reviewing the entire record, I find that Shurtz's Statement and the

---

[2] Polycythemia is a type of blood cancer which causes the bone marrow to make excessive red blood cells, causing the blood to thicken and slow its flow.  *See* https://www.mayoclinic.org/diseases-conditions/polycythemia-vera/symptoms-causes/syc-20355850.

2

Commissioner's Response present a fair and comprehensive summary of Shurtz's relevant testimony before the ALJ and the medical evidence pertinent to his appeal. Specific facts will be discussed in the following Discussion section as needed.

### III.   Discussion

A. <u>Legal Standard</u>

To be eligible for DBI under the Social Security Act, Shurtz must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is

currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).

The claimant bears the burden through Step Four of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402

4

U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision; I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

B. The ALJ's Decision

In his written decision, the ALJ found that Shurtz had not engaged in substantial gainful activity since July 2, 2015, the alleged onset date of disability. At Step Two, the ALJ found that Shurtz had several severe impairments which limited his ability to perform basic work activities, including lung sarcoidosis, congestive heart failure secondary to non-ischemic cardiomyopathy, venous stasis dermatitis of both lower extremities, obstructive sleep apnea, polycythemia likely secondary to obstructive sleep apnea, and obesity. (Tr. 23.) The ALJ determined that Shurtz's hypoglycemia and high blood pressure were non-severe impairments,

5

noting Shurtz's minimal, conservative treatment and lack of complications throughout the alleged period of disability. The ALJ further determined that Shurtz's right heel spur and plantar fasciitis were non-severe, citing record evidence showing that both issues had resolved without issue and did not impose more than minimal limitations on his ability to work. (*Id.*)

At Step Three, the ALJ concluded that Shurtz did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At Step Four, the ALJ determined that Shurtz retained the RFC to:

> perform sedentary work as defined in 20 C.F.R. 404.1567(a). That is, he can lift up to 10 pounds occasionally and can stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. The claimant can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, and crouch but can never crawl. The claimant should avoid exposure to extreme heat and irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. He should avoid unprotected heights and exposure to hazardous machinery. Due to the phlebotomy, the claimant would be absent from the workplace one day every two months.

(Tr. 24.) In light of this RFC assessment, the ALJ determined that Shurtz was capable of performing his past relevant work as a patient scheduler, listed in the Dictionary of Occupation Titles (DOT) Code 205.362-018 as a semi-skilled, sedentary occupation. (Tr. 28.) The ALJ accordingly found that Shurtz was not disabled as defined in the Act.

6

C. <u>Analysis</u>

Shurtz raises two issues in his appeal.  First, Shurtz alleges that his medically determinable impairments, including obesity, cardiomyopathy, venous stasis dermatitis in the bilateral lower extremities, and congestive heart failure, cause his lower legs to swell if he remains seated for extended periods of time without elevating his legs to waist level; accordingly, Shurtz contends that the ALJ erred at Step Four by failing to include a leg elevation requirement in his RFC.  Next, Shurtz argues that the ALJ erred by failing to elicit medical opinion evidence concerning his ability to function in the workplace.  The Commissioner asserts that the ALJ correctly excluded a leg elevation requirement from Shurtz's RFC, noting the lack of evidence in the record showing leg elevation was ever medically required.  The Commissioner further argues that substantial evidence supports the ALJ's RFC determination, despite the absence of a medical opinion addressing Shurtz's workplace functionality.

  1. <u>Leg Elevation Requirement</u>

In his written opinion, the ALJ thoroughly discussed Shurtz's testimony and the record evidence documenting his treatment for his venous stasis dermatitis and chronic bilateral lower leg edema.  (Tr. 25-28, 345, 423, 542.)  At Step Four, however, the ALJ excluded a leg elevation requirement from Shurtz's RFC, concluding:  "[D]espite [Shurtz's] testimony that he must elevate his legs for most

7

of the day . . . the available medical evidence does not show the leg elevation [is] medically required." (Tr. 28.)  Upon review of the record as a whole, substantial evidence supports the ALJ's RFC determination, as well as his conclusion that Shurtz's testimony concerning the intensity, persistence, and limiting effects of his chronic lower extremity edema were not entirely consistent with the record evidence.  (Tr. 25.)

Shurtz contends that the record shows he is medically required to elevate his legs; however, his testimony is not supported by the two treatment notes cited in his appeal.  Shurtz points first to records from a February 2, 2016 examination conducted by his cardiologist, Lisa Schiller, M.D., who recorded: "[Shurtz's] lower extremity edema has improved with elevating his legs." (Tr. 421.)  As the Commissioner correctly points out, Dr. Schiller was not making an observation or statement concerning the efficacy of Shurtz's leg elevation—she was simply recording Shurtz's self-reported symptoms in the history of present illness section of his evaluation report form.  Further, after performing a physical examination, Dr. Schiller noted only trace bilateral pedal edema.  (Tr. 423.)

The second cited treatment record was prepared by Sandeep Hindupur, MD, a cardiologist who examined Shurtz on May 17, 2018.  Dr. Hindupur diagnosed Shurtz with chronic venous hypertension (idiopathic) with inflammation of bilateral lower extremity.  (Tr. 43.)  Dr. Hindupur wrote: "[Shurtz] has been

8

having longstanding symptoms of lower extremity edema . . . [he] has tried conservative therapy in the form of leg elevation without significant benefit." (*Id*.) Dr. Hindupur ultimately recommended "that he should begin conservative therapy in the form of compression stockings." (Tr. 45.)  Like Dr. Schiller, there is no indication that Dr. Hindupur believed continued leg elevation was medically necessary, particularly in light of his recommendation that Shurtz begin an alternative form of treatment to alleviate his edema symptoms.

Similarly, almost two years earlier in April 2016, Shurtz presented to the hospital complaining of bilateral lower extremity edema which had persisted for approximately two weeks. (Tr. 542)  Peter Gardiner, MD, recorded Shurtz's statement that "the swelling improves some with elevation and worsens with weight bearing." (Tr. 545.)  On examination, Shurtz was diagnosed with venous stasis dermatitis of both lower extremities and a venous stasis ulcer. (Tr. 551-52.) After treatment, Shurtz was discharged, instructed to continue taking his medications, and instructed to wear compression stockings, but he was not instructed to raise his legs. (Tr. 552.)

Again, it is Shurtz's burden, and not the Commissioner's burden, to prove his RFC. *Pearsall*, 274 F.3d at 1217; *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995)).  There is no dispute that Shurtz has medical impairments which cause him to experience chronic edema in his lower extremities, and the record shows

9

that Shurtz has received numerous conservative recommendations from his physicians relative to his edema symptoms throughout the alleged period of disability, including medication, compression stockings, exercise, and improving his diet. (*See* Tr. 356, 414, 418, 485, 579-80.) However, there is no evidence in the record that Shurtz has ever been directed by a medical provider to elevate his legs to alleviate his chronic edema, and certainly not for a frequency or duration which would render him unable to perform sedentary work as specified in his RFC. At most, the record shows that three physicians recorded Shurtz's self-reported claim that elevating his legs helped alleviate his edema symptoms—but a physician's mere awareness that an individual is taking conservative measures to alleviate a symptom does not equate to a tacit medical instruction to continue taking those measures.[3]

Moreover, Shurtz offered inconsistent testimony concerning the extent of his edema-related limitations. Shurtz testified that he needs to elevate his legs while seated or his legs will "tend to start swelling up," and that he elevates his legs for "about 95% of the day." (Tr. 65, 68.) However, Shurtz also testified that leaving his feet on the floor "for a couple hours or so might be fine." (Tr. 25, 68.)

---

[3] Shurtz seems to suggest otherwise in his brief, but his contention is not supported by caselaw, and the Court cannot independently find support for this proposition. More to the point, substantial evidence supports the ALJ's conclusion that leg elevation was not medically required, and I may not reverse the ALJ's decision under these circumstances, even if a plausible inference could be made that Shurtz's physicians believed leg elevation was necessary. *See Boyd*, 831 F.3d at 1020.

Shurtz's RFC provides that he can "stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks." (Tr. 24.)  This sedentary RFC accommodates Shurtz's alleged ability to sit for only two-hour periods of time before needing to elevate his legs.  *See* SSR 96–9p, 61 Fed. Reg. 34478 (July 12, 1996) (recognizing that an individual receives a morning break, a lunch period, and an afternoon break in approximately two hour intervals); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013).  Further, despite testifying that he elevates his legs for most of the day, Shurtz did not mention leg elevation anywhere in his Function Report, nor describe any limitations imposed by his chronic edema on his ability to sit or complete other activities of daily living.  (Tr. 208-18.)

An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony.  *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).  The record evidence simply does not support Shurtz's claims as to the limitations imposed by his chronic edema, thus the ALJ properly discounted his testimony.  Additionally, Shurtz has received only conservative treatment for his edema symptoms throughout the alleged period of disability, and an ALJ may properly weigh conservative treatment as a negative factor while assessing a claimant's self-reports concerning their symptoms.  *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).  Substantial evidence supports the

11

ALJ's determination that Shurtz's statements concerning his alleged leg elevation requirement were inconsistent with the objective medical evidence and his own testimony, and so I conclude the ALJ did not err by excluding a leg elevation requirement from his RFC.

    2. <u>Medical Opinion Evidence</u>

Shurtz also argues that the ALJ's RFC determination is not supported by substantial evidence due to the absence of medical opinion evidence in the record. Shurtz alleges that his medically determinable impairments cause a variety of functional limitations—including fatigue, shortness of breath, coughing, and edema of the lower extremities—which preclude performance of sedentary work as specified in his RFC.  Shurtz further asserts that he is required to undergo a phlebotomy once every two to three months to treat his polycythemia condition, and that he has to use a CPAP machine at night, and for several hours during the day, to help alleviate his respiratory symptoms. (Tr. 69.)  For all these reasons, Shurtz contends that the ALJ erred because he failed to obtain medical opinion evidence addressing Shurtz's physical ability to function in the workplace.  The Commissioner responds that the ALJ was not required to elicit medical opinion evidence under the circumstances, and that substantial evidence supports the ALJ's findings.  I agree with the Commissioner and affirm the ALJ's decision.

The ALJ bears "the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence," *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000), including the "medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). Additionally, a claimant's RFC is a medical question, and "at least some" medical evidence must support the RFC determination. *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Accordingly, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Id.* (internal quotation omitted).

The ALJ did not elicit an opinion from a medical provider regarding Shurtz's functional limitations. (Tr. 28.) However, the Eighth Circuit recognizes that there is no requirement than an RFC determination be supported by a specific medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Myers*, 721 F.3d at 527. "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's [RFC] findings.'" *Id.* (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). The ALJ is only required to order medical tests and additional examinations if the available medical records do not provide sufficient evidence to determine if the claimant is disabled. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

13

The ALJ determined that Shurtz retained the RFC to perform a reduced range of sedentary work.  (Tr. 24.)  In reaching this conclusion, the ALJ considered Shurtz's testimony and Function Report (Tr. 25); Shurtz's longitudinal medical history, including medical test results, the objective observations of his treating physicians, and the examination performed by a state consultant (Tr. 25-28); and the evidence documenting the efficacy of the various treatments for his impairments.  (Tr. 25-28.)  Upon review of the record as a whole, substantial evidence supports the ALJ's determination of non-disabled and his findings with respect to Shurtz's RFC, despite the absence of a medical opinion addressing Shurtz's workplace functionality.

Shurtz's argues that his respiratory-related limitations imposed by his lung sarcoidosis and obesity, including chronic cough and shortness of breath, impede his ability to perform sedentary work as specified in his RFC.  However, the ALJ properly found that Shurtz's testimony concerning these limitations is not entirely consistent with the evidence, as the record shows that Shurtz routinely demonstrated normal, unremarkable respiratory function throughout the alleged period of disability.

For example, Shurtz was examined by his physician, Mark Schroeder, M.D., and observed to have clear lungs bilaterally with no rhonchi, rales, or wheezing on April 20, 2015 (Tr. 304), October 5, 2015 (Tr. 306), April 4, 2016 (Tr. 615),

14

September 26, 2016 (Tr. 613), and March 12, 2018 (Tr. 607). Additional examinations were conducted by Shurtz's treating pulmonologists, Dr. Brook and Dr. Zuick, on March 21, 2016 (Tr. 355), April 26, 2016 (Tr. 362), July 21, 2016 (Tr. 376), December 1, 2016 (Tr. 383), February 21, 2017 (Tr. 388), and June 20, 2017 (Tr. 396); all examinations found unproblematic results, and all included a notation that Shurtz's breathing was "effortless and normal." Dr. Hindupur also conducted examinations on February 8, 2018, and May 17, 2018, and in both examinations, Dr. Hindupur observed that Shurtz was negative for cough, shortness of breath, and wheezing; that he breathed with normal effort and sound; that he was not in any respiratory distress; and that there was no wheezing. (Tr. 39-46.) Substantial evidence thus supports the ALJ's determination that Shurtz retains the capacity to perform sedentary work despite his respiratory-related limitations.

As for Shurtz's obstructive sleep apnea, the record shows that he uses a CPAP machine while sleeping to help alleviate the breathing difficulties caused by the condition.[4] (Tr. 344.) The record reflects that Shurtz's regular CPAP usage

---

[4] Shurtz also testified that he also uses his CPAP machine for several hours during the day. (Tr. 69.) As with his alleged leg raising requirement, there is scant evidence supporting Shurtz's testimony, and no evidence that a medical provider has ever instructed Shurtz to use his CPAP during the day. The only record evidence supporting Shurtz's alleged daytime CPAP usage is a note from Dr. Schroeder on March 20, 2017, stating that Shurtz reported he "sometimes" uses his CPAP during the day. (Tr. 610.) However, treatment records from March 21, 2016 reflect that Shurtz averaged only 7 hours and 54 minutes of CPAP usage per day between November 24, 2015 and February 21, 2016, which belies his testimony that he uses his CPAP for four hours

allows him to sleep comfortably, and that it effectively mitigates his alleged daytime fatigue. For instance, on March 21, 2016, Shurtz reported that he was "sleeping well" with the CPAP machine, and that his "daytime energy is better since he's been using [his] CPAP machine." (Tr. 353.) On July 24, 2016, Shurtz repeated that he was "sleeping well" and "feels rested upon awaking," and he denied daytime sleepiness. (Tr. 366.) Treatment notes from December 1, 2016, February 21, 2017, and June 20, 2017 further reflect the effectiveness of his nighttime CPAP usage. (Tr. 383, 385, 391.) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). Substantial evidence supports the ALJ's determination that Shurtz's obstructive sleep apnea does not impose disabling limitations.

As for his polycythemia, the evidence supports Shurtz's testimony that he is required to undergo phlebotomy treatments approximately once every two to three months. (Tr. 304, 345, 366, 591-605.) Accordingly, the ALJ included a provision in Shurtz's RFC stating: "Due to the phlebotomy, the claimant would be absent from the workplace one day every two months." (Tr. 24.) A vocational expert testified that an absence of one day every two months "falls into the range of

---

during the day, in addition to using it throughout the night. (Tr. 353.) While Shurtz does not specifically challenge the ALJ's decision on this issue, I find that substantial evidence supports the ALJ's findings, and his determination to exclude daytime CPAP usage from Shurtz's RFC.

toleration, in general." (Tr. 77.) The vocational expert's testimony that an individual with Shurtz's RFC could perform his past relevant work as a patient scheduler constitutes substantial evidence to support this RFC determination. *Gieseke v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014.)

To the extent Shurtz alleges that his polycythemia and related phlebotomy treatments cause disabling fatigue-related symptoms, substantial evidence supports the ALJ's determination to the contrary. On February 22, 2016, Shurtz reported to Dr. Brook that he did not believe his excessive sleepiness interfered his ability to do his previous work as a patient scheduler. (Tr. 353.) And, as discussed above, Shurtz routinely denied daytime sleepiness and consistently reported to his physicians that he slept well and felt well-rested upon awakening. (*See, e.g.* Tr. 366, 380, 385.)

Shurtz does not appear to challenge the ALJ's findings as to his congestive heart failure secondary to non-ischemic cardiomyopathy, nor does he specifically assert that these impairments cause functional limitations which render him disabled. Regardless, Shurtz has exhibited normal cardiovascular findings on examination (Tr. 414), and upon review of the record as a whole, substantial evidence supports the ALJ's conclusions that Shurtz's cardiovascular impairments are stable, well-controlled with treatment and medication, and ultimately non-disabling. (Tr. 28.)

17

Finally, as discussed above, the ALJ did not find Shurtz disabled because of his venous stasis dermatitis, nor include a leg elevation requirement in Shurtz's RFC, because he properly determined that Shurtz's testimony concerning the extent of his lower extremity edema-related limitations was not supported by the objective medical evidence. (Tr. 28.) It is appropriate for an ALJ's RFC determination to be influenced by his findings as to the claimant's credibility, and substantial evidence supports the ALJ's assessment that Shurtz's testimony was not entirely credible as to his alleged edema-related limitations. *Accord Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)).

D. <u>Conclusion</u>

The Court's role in appeals of this nature is limited and deferential—the Eighth Circuit has held that the Court should "review the record to ensure than an ALJ does not disregard evidence or ignore potential limitations," rather than ensure that each and every aspect of the RFC determination is supported by citations to specific evidence in the record. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (internal quotation omitted). The ALJ fully and fairly evaluated the available medical evidence and properly developed a sedentary RFC which accommodated the numerous functional limitations imposed by Shurtz's medically determinable impairments. Because the ALJ's RFC findings

18

are supported by substantial evidence on the record as a whole, the decision is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Rayce Shurtz's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of October, 2020.